UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SUSAN M. PARKER, a single woman,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, a foreign insurance company,

    Defendant.

CASE NO. C10-5784BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SANCTIONS

This matter comes before the Court on Defendant's ("Allstate") motion for summary judgment (Dkt. 7) and its motion for sanctions (Dkt. 10). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part Allstate's motion for summary judgment and denies its motion for sanctions as discussed herein.

**I. PROCEDURAL HISTORY**

On November 11, 2010, Allstate moved for summary judgment regarding Plaintiff's ("Parker") failure to cooperate. Dkt. 7. On November 29, 2010, Parker opposed the motion (Dkt. 14), and on December 3, 2010, Allstate replied (Dkt. 16).

ORDER - 1

On November 11, 2010, Allstate moved for sanctions under Fed. R. Civ. P. 11. Dkt. 10. On November 29, 2010, Parker opposed the motion (Dkt. 13), and on December 3, 2010, Allstate replied (Dkt. 15).

## II. FACTUAL BACKGROUND

This matter arises out of a motor vehicle accident on December 22, 2009 (Dkt. 1-3), in which Parker was injured. Complaint ¶ 1. The at-fault driver was an uninsured motorist (UIM). *Id*. Parker's Allstate insurance policy provided for $50,000 in UIM coverage. *Id*. ¶ 2. Parker's complaint alleges that Allstate has refused to pay the benefits on her UIM claim. *Id*. ¶ 4.

Parker filed her UIM claim with Allstate on the date of the accident. *See* Declaration of Jim Herring (Herring Decl., Dkt. 9), Ex. A (letter from Allstate dated December 26, 2009, acknowledging claim). By letter dated January 28, 2010, Allstate provided her with the claim forms that needed to be completed and informed her of what other documentation was needed; the letter stated that these forms and other documents must be submitted and complete before Parker's UIM claim could be processed. *Id*., Ex. B.

Allstate sent Parker several letters requesting the required forms to be returned before it could process her claim. *See id*., Ex. C (letter and accompanying forms dated February 2, 2010); Ex. E. Shortly thereafter, both parties obtained legal representation regarding this claim. Allstate then began sending letters to Parker's counsel (the "Fullers"). *See e.g., id*., Ex. D (letter from Allstate confirming the the Fullers'[1] representation of Parker and informing the Fullers of the documents required to further process Parker's claim).

---

[1] Parker is represented by the Law Firm of Fuller and Fuller, where both Mr. and Ms. Fuller are attorneys. The Court, for convenience, will refer to Parker's counsel as the Fullers.

ORDER - 2

In a letter dated April 23, 2010, Allstate's counsel ("Leid") informed the Fullers that he needed to obtain from Parker a recorded statement regarding the accident, damages claimed, and medical treatment received following the accident. *Id*., Ex. E. The letter also requested that authorization forms be completed (medical and wage loss information forms included with the letter). *Id*.

In a letter dated June 4, 2010, the Fullers wrote to Allstate representative Tony Wyche ("Wyche"). The letter informed Wyche of the Fullers' representation of Parker, the extent of her injuries claimed from the accident, and an accounting of her medical expenses and wage loss. Herring Decl., Ex. K.

In a letter dated June 14, 2010, Leid informed the Fullers that it reserved the right to make defenses later, should a suit arise, and that Parker was not being cooperative with Allstate's investigation and handling of Parker's claim. Specifically, the letter mentioned other letters Allstate had previously sent to Parker's counsel informing Parker therein of the documentation that remained outstanding. Herring Decl., Ex. H. (letters dated April 23, 2010, May 7, 2010, and May 27, 2010). The letter also informed Parker's counsel that Allstate believed that it was entitled to take an examination under oath ("EUO") of Parker before processing her claim. *Id*.

In a letter dated June 15, 2010, Allstate acknowledged Parker's demand packages, dated June 4, 2010 and June 11, 2010. Leid reminded the Fullers that Allstate still needed documentation to satisfy its "[u]nrestricted medical and wage authorizations." Herring Decl., Ex. I.

In a letter dated July 7, 2010, the Fullers wrote to Allstate claims adjuster Jim Herring ("Herring"), describing Parker's accident, her wage loss, and the extent of some of her injuries. Herring Decl.*,* Ex. L. The letter also claimed that Parker had not received the required "Proof of Loss" forms, which Allstate requires to be submitted. *Id*. The letter

ORDER - 3

goes on to cite several statutes that the Fullers believed to be violated by Allstate's handling of Parker's claim. *Id*.

In a letter dated July 26, 2010, Leid informed the Fullers that Allstate regarded Parker to be proceeding as a first-party insured on this claim; Parker's position was that their relationship was adversarial, believing that Allstate stood in the shoes of the uninsured motorist. *See* Leid Decl., Ex. 1. The letter offered $7582.00 as a final settlement based upon accepting Parker's claim that the accident caused soft tissue neck and back injuries. *Id*. The offer did not consider Parker's claimed knee injury. *Id*. Leid's letter disputed the Fullers' position as to the validity of Allstate's requests for obtaining Parker's medical records going back ten years, for purposes of determining pre-existing conditions. *Id*. Leid concluded his letter by asking the Fullers to provide eight pieces of documentation that Allstate believed remained outstanding before it could process Parker's claim. *Id*.

In a letter dated August 13, 2010, the Fullers made the following statements: (1) Parker accepts Allstate's position that Parker is a first-party claimant; (2) Parker has been fully cooperative; (3) the Fullers were authorized by Parker to accept Allstate's offered settlement[2];(4) Parker has already provided the information she has available regarding her knee injury; (5) a medical authorization was included for Parker's claimed injuries – this authorization contained a stricken provision that would have permitted Allstate to provide Parker's medical records to third parties for purposes of evaluating Parker's claims; (6) an additional UIM claim form was included with the letter; (7) Parker agrees that an EUO is provided for under the policy but only upon a showing by Allstate that it

---

[2]However, the Fullers' statement as to accepting settlement on behalf of Parker was ambiguous as to whether Parker intended to seek additional monies under the policy for her knee injury or would be accepting this offer as a final offer to settle her total claim.

ORDER - 4

has a good faith basis for requiring the EUO; and (8) a suggested date of August 20, 2010, for conducting the EUO was not workable. Leid Decl., Ex. 2. The letter concludes by addressing the eight pieces of information requested in Leid's prior letter and stating either that such information was believed by the Fullers to have already been provided or that they required more information before Parker would satisfy Allstate's requests.

In a letter dated August 24, 2010, Leid acknowledged the August 13, 2010 letter, and offered September 17, 2010, as a date for the EUO to take place or that the parties could agree to a different time if the proposed date did not work. Leid Decl. Ex. 3. The letter also reminded the Fullers of Allstate's position that Parker was required to submit to the EUO. *Id*. The letter provided the forms still needing to be provided by Parker and clarified some other requests that had been made in prior communications. *Id*. The letter also renewed Allstate's offer of settlement in the amount of $7,582. *Id*.

On September 7, 2010, the Fullers sent Leid a letter informing him that he had not yet provided responses to the Fullers' inquiry about the requested information. The letter stated that Leid had not provided an adequate basis on which to require Parker to submit to an EUO. This letter requested Leid to identify the provision within the policy that would require Parker to submit to the EUO. The letter concludes by stating that the Fullers will "advise whether Ms. Parker will be submitting to the" EUO. Leid Decl. Ex. 4.

In a letter dated September 16, 2010, Leid responded to the Fullers' letter of September 7, 2010, in which Leid clarified that the offer of settlement was not, and could not be, accepted as a partial settlement and that the offer was a final settlement offer. The letter also informed the Fullers that they had not contacted Leid's office to reschedule the EUO.

In a letter dated September 17, 2010, the Fullers informed Leid that Allstate and/or its representatives failed to appear for Parker's EUO. Parker's counsel asserted that a message was left for Leid and the phone call was not returned. Leid Decl., Ex. 6.

ORDER - 5

In a letter dated September 22, 2010, Leid informed the Fullers that he believed the Fullers had mischaracterized the events thus far. Leid pointed out that the Fullers' statement that they would "advise whether Ms. Parker will be submitting to an examination" made it "clear that [they] were striking the [EUO] scheduled for September 17, 2010 . . . ." Leid Decl., Ex. 7. Leid reaffirmed the offer of settlement and that a new date for the EUO should be scheduled.

Allstate and Parker never agreed to a rescheduled EUO date. Instead, on September 23, 2010, Parker filed suit in this matter in Thurston County Superior Court, and Allstate removed the matter pursuant to this Court's diversity jurisdiction. Allstate now moves for summary judgment on the issue of failure to cooperate and for sanctions stemming therefrom. Dkts. 7, 10.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

ORDER - 6

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Allstate's Summary Judgment Motion**

    **1.     Failure to Cooperate**

Allstate maintains that Parker breached the terms of her insurance policy by filing this suit because Parker failed to cooperate with Allstate's investigation of her UIM claim. *See* Dkt. 7. Allstate argues that Parker failed to cooperate with respect to completing and submitting the required forms and requisite documentation that needed to be submitted before Allstate could process her claim. Allstate further argues that Parker breached the terms of her insurance policy when, instead of submitting to the EUO, Parker filed suit.

In opposition, Parker asserts that she was cooperative in all respects and that Allstate failed to conduct the EUO that it scheduled for September 17, 2010. Dkt. 14 (response in opposition).

### a. Failure to Provide Necessary Documentation

On summary judgment, the Court must take the facts in the light most favorable to the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Here, the parties present different versions of the truth as to whether Parker was cooperative with respect to the provision of documentation for Parker's claim. Many of the letters between Leid and the Fullers suggest that either (1) the Fullers believed they had provided the necessary documents, or (2) that there was a disagreement as to what extent Parker needed to provide more documentation.

In Washington, an insured cannot recover when he/she refuses to provide material information to the insurer. *See, e.g., Tran v. State Farm Fire and Cas. Co.*, 136 Wn.2d 214 (1998); *see also* Dkt. 7 at 7-8 (collecting cases). The line of cases that Allstate cites for this proposition is largely unhelpful. To begin with, the holding in *Tran* requires "refusal" to cooperate on the part of the insured. The Court has not been presented with facts that Parker absolutely refused to supply information. Instead, Parker seems to have disagreed that all the information was actually required before Allstate could complete its investigation. Further, the *Tran* case, upon which Allstate relies heavily, primarily concerned an issue of fraud, which has not been presented as an issue in this case.

Additionally, Allstate contends that Parker was noncooperative because she altered a provision in the medical release form. This release, Allstate contends, would have permitted Allstate to get expert medical opinion as to the extent of Parker's claimed injuries. While it could be argued that such is an absolute refusal to cooperate, based on the current record, in the context of the facts provided by Parker, this remains a question of fact. In Leid's many letters and conversations with the Fullers this issue could have been sorted out or other terms reached that would have satisfied Parker's apparent privacy concerns.

Based on the foregoing, the Court cannot conclude as a matter of law that Parker was uncooperative to the extent it constituted a breach of contract with respect to Allstate's document requests.

### b.  Refusal to Submit to an EUO

Allstate argues that Parker breached the terms of her policy by filing suit before she submitted to an EUO. Parker maintains that Allstate did not conduct the EUO.

Washington courts have consistently held that an insured may not recover if he/she violates the terms of the policy. *See, e.g., Downie v. State Farm Fire & Cas. Co.*, 84 Wn. App. 577 (1997). In *Downie*, unlike this case, the policy at issue contained an express provision requiring the insured to submit to the EUO. *Id*. at 581. It is uncontroverted Parker's policy does not have such an express provision.

However, under Washington insurance law, "an insurance regulatory statute becomes part of the insurance policy." *Britton v. Safeco Ins. Co. of America*, 104 Wn.2d 518, 526 (citing *Touchette v. Nortwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332 (1972). RCW 48.18.460 is such a statute. It provides that "[i]f a person makes a claim under a policy of insurance, the insurer may require that person to be examined under oath administered by a person authorized by state or federal law to administer oaths." RCW 48.18.460 applies to Parker's case.

Parker attempts to distinguish *Downie* on the basis that Downie's policy contained an express provision requiring Downie to submit to the EUO, whereas Parker's policy does not contain such a provision. This is a difference without distinction. Because RCW 48.18.460 provides that Allstate (an insurer) may require Parker (a person making a claim) to submit to the EUO, Parker's policy does contain such a provision. Indeed, the Fullers' August 13, 2010, letter to Leid confirms that they agree such a provision exists within the contract. Although the Fullers placed a "good faith" qualifier on this EUO

term, the Fullers still, at least initially, agreed that Parker would submit to the EUO, and the Fullers made some attempt to schedule the EUO with Allstate.

However, upon review of the record – specifically the parties' letters addressing the scheduling or non-scheduling of the EUO – the Court is left unpersuaded by Parker's position that she has cooperated with respect to the EUO. To begin with, Leid provided the Fullers with the relevant statute and cases on this point, the very statute and cases discussed above. Thus, the Fullers were on notice of Parker's need to submit to the EUO.

More significantly, the letters sent back and forth between Leid and the Fullers sheds light on the level of cooperation exerted by Parker with respect to submitting to an EUO. On September 7, 2010, Leid made mention of the need to schedule the EUO. On September 16, 2010, Leid informed the Fullers that they had yet to hear back about the scheduling of the EUO. Based on these letters, the Fullers were made fully aware that the parties had not reached an understanding as to when the EUO would be conducted. This fact makes the Fullers' accusatory letter of September 17, 2010, unhelpful in establishing that it was Allstate who failed to appear for the EUO. To make sure that the Fullers were well aware of the need to still schedule an EUO for Parker, Leid sent yet another letter on September 22, 2010, informing the Fullers as to why no EUO took place on September 17, 2010. For whatever reason, Parker did not reschedule the EUO and instead filed suit against Allstate on September 23, 2010, just one day after receiving Leid's letter reiterating that the EUO needed to be scheduled and that Allstate believed it was the Fullers who had failed to schedule a date for the EUO.

Based on the foregoing, taking the facts in the light most favorable to Parker, the Court concludes that Parker failed to cooperate with respect to the EUO, inexplicably filing suit before having the EUO. As a result, Parker breached her insurance contract. This breach could constitute a release of Allstate as to its responsibilities under the policy if Allstate established that it "was *actually* prejudiced by the [Parker's] breach." *Keith v.*

ORDER - 10

*Allstate Indem. Co.*, 105 Wn. App. 251, 255 (2001); *see also Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wn. App. 712, 725 (1997).

The *Pilgrim* court held that "[t]o establish prejudice, the insurer must show 'concrete detriment . . . together with some specific harm to the insurer caused thereby. Moreover, the issue of *prejudice* from a policy breach is a question for the jury and will be presumed only in extreme cases.'" *Pilgrim*, 89 Wn. App. at 725. Allstate's conclusory statement that it has been prejudiced as a matter of law fails to meet their burden, as set out in *Pilgrim*. *See id*. Allstate has also not shown this to be the "extreme case" where prejudice will be presumed. *See id*.

Therefore, while the Court concludes that Parker did not cooperate as to the EUO, whether Allstate was prejudiced by Parker's breach remains a question of fact.

**2.      Sanctions**

Allstate's motion for sanctions under Fed. R. Civ. P. 11 is denied.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Allstate's motion for summary judgment (Dkt. 7) is **GRANTED in part** and **DENIED in part** and Allstate's motion for sanctions (Dkt. 10) is **DENIED**.

DATED this 14th day of January, 2011.

BENJAMIN H. SETTLE
United States District Judge